IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

CAROLYN ARHART EDWARDS )
AND MISTY ARHART WOOD, )
Co-Administrators of the Estate of )
ROBERT JOSEPH EDWARDS, )
Deceased, )
  )
           Plaintiffs, )
  )
v. )    Civil Action No. 3:25-cv-00485-HEH
  )
HENRICO COUNTY SHERIFF )
ALISA A. GREGORY, Individually, )
*et al.*, )
  )
           Defendants. )

**MEMORANDUM OPINION**
**(Resolving Motions to Dismiss)**

THIS MATTER comes before the Court on three Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Carolyn Arhart Edwards and Misty Arhart Wood (collectively, "Plaintiffs"), the co-administrators of decedent Robert Joseph Edwards' ("Edwards") estate, filed their First Amended Complaint ("FAC," ECF No. 26) against Sheriff Alisa A. Gregory ("Gregory") in her individual capacity, Chief Deputy Sheriff Christina Pickens ("Pickens") in her individual capacity, Deputy Brianna T. Lockhart ("Lockhart") in her individual capacity, LPN Pamela Coleman ("Coleman") in her individual capacity, and American Medical Staffing, Inc. ("AMS") (collectively, "Defendants"). (*Id.*) Plaintiffs alleged that Defendants violated Edwards' civil rights when they collectively disregarded or failed to recognize his need for emergency medical

care. Plaintiffs further allege this failure caused a critical delay in Edwards' emergency transport to, and evaluation at, a hospital, thus contributing to his untimely death from a heart attack[1] or other acute cardiac condition.

In response to Plaintiffs' FAC, Defendants (excluding Pickens) filed various Motions to Dismiss. (ECF Nos. 28, 30, 32.) The parties also submitted memoranda in support of their respective positions. (ECF Nos. 29, 31, 33, 36, 37, 38 ) The Court heard oral arguments from the parties on December 16, 2025. (*See* Min. Entry, ECF No. 53).

During the hearing, Plaintiffs apprised the Court that they no longer would pursue Count III of the FAC, in which they alleged Defendants were grossly negligent resulting in wrongful death. (*Id.*) Also, during the hearing, Defendants conceded that, with respect to the medical negligence resulting in wrongful death claim as alleged in Count IV, Plaintiffs successfully stated a claim upon which relief could be granted. (*Id.*) Finally, the parties jointly stipulated to the dismissal of Plaintiffs' claims against Lockhart, without prejudice, rendering her Motion to Dismiss (ECF No. 28) moot. (Notice of Voluntary Dismissal, ECF No. 52; *see* Order, ECF No. 55.)

The following claims remain in relation to the Motions to Dismiss: Count I alleging deliberate indifference to serious medical need in violation of 42 U.S.C. § 1983, against Coleman; Count II alleging promulgation of an unconstitutional policy of denial, delay, and/or withholding medical care in violation of 42 U.S.C. § 1983, against Gregory; and Count V alleging willful and wanton negligence resulting in wrongful death, against

---

[1] Using medical terms, a "heart attack" is also called a "myocardial infarction."

Gregory, Coleman, and AMS.  For the reasons contained herein, the Court will grant Gregory's Motion to Dismiss Count II (ECF No. 32) and deny the Motion to Dismiss as to Count I against  Coleman, and Count V specifically as to Coleman, and AMS.

## I. BACKGROUND[2]

During the incidents preceding his death from an emergency cardiac event on November 30, 2024, Edwards was a pre-trial detainee at the Henrico County Jail East ("Jail") awaiting adjudication of a grand larceny charge in the Henrico County Juvenile and Domestic Relations Court.  (Compl. ¶ 15.)  On October 17, 2024, Edwards—still in custody at the Jail—was arraigned in Chesterfield County General District Court on prior charges for drug possession, violation of pretrial conditions, and two counts for failure to appear in contempt of court.  (*Id.* ¶ 16.)  On November 20, 2024, the Chesterfield County General District Court found Edwards guilty of the drug charge and the two (2) failures to appear charges and "sentenced [him] to jail."  (*Id.* ¶ 17.)

Edwards' complaints of chest pain began on November 18, 2024, after eating lunch.  (*Id.* ¶ 19.)  Ninety minutes after the pain began, a Jail nurse ordered over-the-counter antacids for him.  (*Id.*)  Jail medical staff prescribed more over-the-counter antacids and heartburn relief on November 24th and 25th, in response to Edwards' continued complaints of chest pain.  (*Id.* ¶¶ 20–21.)

---

[2] In considering a motion to dismiss, "[the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Svs.. Inc..* 417 F.3d 418, 420 (4th Cir. 2005) (citations omitted).  The Court cautions, however, that the facts alleged by Plaintiffs are recited here for the limited purpose of deciding the present Motions to Dismiss.  The recited facts are not factual findings upon which the parties may rely for any other issue(s) in this matter.

Plaintiffs allege that on November 30, 2024, around 12:00 p.m., Edwards began to experience extreme chest pain. (*Id.* ¶ 22.) He repeatedly activated the call button in his cell, yelling for help and requesting that Jail personnel call 911. (*Id.*) No one responded until Deputy Lockhart, during the course of her normal rounds, arrived at his cell at approximately 12:52 p.m.—nearly one (1) hour after his first call for help. (*Id.* ¶¶ 23–25.) Allegedly, Edwards was crying and in visible physical distress as he explained to Lockhart that he was experiencing chest pain and had vomited several times. (*Id.*)

Instead of calling for emergency medical services, Lockhart contacted Licensed Practical Nurse Coleman, an employee of AWS, a company that contractually provided medical personnel to the Jail. (*Id.* ¶¶ 11, 27.) Coleman checked on Edwards approximately an hour later at 1:08 p.m., during her normal pill-dispensing time. (*Id.* ¶¶ 27, 29–30.) Plaintiffs contend Coleman should have recognized Edwards' symptoms—including extreme chest pain, crying, clutching his chest, and vomiting—as potentially life-threatening. (*Id.* ¶ 30.) However, she allegedly disregarded his symptoms, dismissing them as indigestion or acid reflux, and offered antacids. (*Id.* ¶¶ 30–33.)

At approximately 1:26 p.m., Edwards video-called a friend and asked that person to contact the Jail on his behalf. (*Id.* ¶¶ 34–39.) The friend, unsuccessful in reaching the Jail directly, called 911. (*Id.* ¶ 40.) New Kent Fire-Rescue ("EMS") was dispatched to the facility and arrived at 1:35 p.m. (*Id.* ¶ 41.)

4

Chief Deputy Pickens instructed Lockhart to escort Edwards to the medical unit. (*Id.* ¶ 42.) Plaintiffs allege that Lockhart delayed for at least two minutes, "ambl[ing] slowly around the perimeter of the first floor of the housing unit" for "no reason" before arriving at his second-floor cell at 1:38 p.m. (*Id.* ¶¶ 43–45.) A verbal altercation ensued, during which Edwards—still experiencing severe pain and now unable to move—argued with Lockhart when she ordered him to put on his uniform, insisting he be "properly dressed." (*Id.* ¶¶ 46, 49, 51–53, 56.) Plaintiffs allege that throughout this interaction, Edwards continued to request transfer to the medical unit. (*Id.* ¶ 56.) Lockhart eventually drew her OC spray out of its holster when Edwards allegedly moved towards her while yelling. (*Id.* ¶¶ 57–58.) She then radioed to Pickens that Edwards could not walk. (*Id.* ¶ 61.) Plaintiffs contend Lockhart admitted after the incident that she simply "stood and watched his behavior." (*Id.* ¶ 55.)

Coleman and Pickens wheeled Edwards to the booking area at 1:46 p.m. so that EMS could evaluate him. (*Id.* ¶ 63.) While surveillance video allegedly shows Edwards in extreme distress, Coleman noted "no acute distress" in her record of the incident. (*Id.* ¶ 65.) EMS arrived "on scene" at 1:37 p.m. but were not permitted to see Edwards until almost twelve (12) minutes later. (*Id.* ¶ 62.) Allegedly, upon encountering EMS, Pickens "felt the need to explain, through the sallyport and common area door, what took her so long to bring [Edwards] to EMS for evaluation . . . ." (*Id.* ¶ 64.) Only after that did she permit EMS "to make first contact" with him. (*Id.*)

EMS documented his vitals as within the normal range, and a 12-lead EKG showed a normal sinus rhythm. (*Id.* ¶ 76.) However, paramedics allegedly directed Jail

5

personnel to transport Edwards to the hospital immediately for critical evaluation, noting that a normal EKG is inclusive given his presentation of pain. (*Id.* ¶¶ 76–78, 90.) Both Pickens and Coleman allegedly refused transport authorization, citing a jail policy requiring a doctor to approve medical transport. (*Id.* ¶¶ 80–81.) Plaintiffs contend no doctor was on site that day. (*Id.* ¶ 82.) EMS left the facility at 2:04 p.m. (*Id.* ¶ 83.)

Following EMS's departure, Coleman gave Edwards Motrin and two cups of water before he was returned to his cell at 2:17 p.m. (*Id.* ¶ 97.) At approximately 2:24 p.m., about two-and-a-half hours after his symptoms began, Edwards complained of dizziness and difficulty breathing. (*Id.* ¶ 100.) He vomited, collapsed, and became unresponsive with seizure-like activity. (*Id.*) Jail staff began administering cardiac pulmonary resuscitation (CPR) to Edwards, and an automated external defibrillator (AED) indicated that his heart was in a state of ventricular fibrillation (V-fib). (*Id.* ¶ 101.)

At 2:25 p.m., Jail personnel again contacted EMS, who arrived at 2:32 p.m. (*Id.* ¶¶ 101, 103.) Plaintiffs contend that Jail staff delayed EMS personnel from reaching Edwards until 2:36 p.m. (*Id.* ¶¶ 104–05.) EMS treated Edwards using Advanced Life Support protocol which included administration of CPR, four AED shocks for V-fib, placement of an interosseous line, placement of a "King airway," and administration of epinephrine and an amiodarone bolus. (*Id.* ¶¶ 106–07.) Nearly thirty-six (36) minutes after their arrival, EMS transported him to Sentara Williamsburg Regional Hospital. (*Id.* ¶¶ 108, 110.) EMS notes indicate that jail staff led them to the wrong location to exit, causing even further delay in transporting Edwards to the hospital. (*Id.* ¶ 109.) Upon his

arrival at the hospital, staff continued to administer CPR and documented pulseless electrical activity. (*Id.* ¶¶ 111–12.) At 3:45 p.m., after intubating him, giving him more epinephrine, and administering two bedside echocardiograms, doctors pronounced Edwards deceased. (*Id.* ¶¶ 110–15.)

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss . . . tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (internal quotation marks omitted). For a complaint to be sufficient under Rule 12(b)(6), a plaintiff must assert "[f]actual allegations" that are "enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Moore v. Flagstar Bank*, 6 F. Supp. 2d

496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). A court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

When considering a Rule 12(b)(6) motion to dismiss, a court must accept as true all of the non-moving party's well-pleaded allegations. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). However, legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

As previously noted, to resolve the pending Motions to Dismiss, the Court need only render dispositions on: Count I against Coleman, alleging deliberate indifference to serious medical need, in violation of 42 U.S.C. § 1983; Count II (against Gregory) alleging she promulgated an unconstitutional policy of denial, delay, and/or withholding of medical care, in violation of 42 U.S.C. § 1983; and Count V (against Gregory, Coleman, and AMS) alleging willful and wanton negligence resulting in wrongful death.

Section 1983 provides a federal judicial remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim for relief under Section 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, the plaintiff must further allege the deprivation (1) was proximately caused, (2) by the actions of a "person," and (3) acting

"under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). "Section 1983 confers no substantive rights. . . [but] provides a procedural vehicle for pursuing in federal court a claim for a violation of a federal constitutional or statutory right by one acting under color of state law." *Bonnell v. Beach*, 408 F. Supp. 3d 733, 739 n.1 (E.D. Va. 2019) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615-18 (1979)). Allegations involving mere violations (without deprivation of protected rights) of federal law do not suffice. *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989).

### A. Count I: Deliberate Indifference to Serious Medical Need, In Violation of 42 U.S.C. § 1983

In Count I, Plaintiffs allege that, in violation of 42 U.S.C. § 1983 ("Section 1983"), Nurse Coleman exhibited deliberate indifference to Edwards' serious medical need when she delayed responding to his reports of severe chest pain and subsequently administered antacids to him, despite her professional training to recognize signs of a cardiac emergency. (FAC, at 26–27) Plaintiffs further allege that Coleman refused the attending paramedic's directive for Edwards' immediate hospital transport and either failed to seek a physician's guidance or provided intentionally inaccurate information to her medical director to justify her denial of Edwards' emergency care. (*Id.* at 27–28.)

To prevail on a claim asserting denial of medical care under 42 U.S.C. § 1983, a plaintiff must show facts that demonstrate deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate

9

indifference on the part of a health care provider, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). Deliberate indifference may be demonstrated by actual intent or reckless disregard. *Id.* A defendant acts recklessly by disregarding a substantial risk of danger of which the defendant knows or should know. *Id.* Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle,* 429 U.S. at 106 (1976); *Miltier,*896 F.2d at 852. However, failure to respond to an inmate's known medical needs raises an inference of deliberate indifference toward those needs. *Miltier,* 896 F.2d at 853; *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). "A prison medical professional that serves 'as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Id.* (quoting *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005)).

Under the Eighth Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Id.* at 103. Any "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). The protections afforded to convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier,* 238 F.3d 657, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 243–44 (1983)). While the Eighth Amendment protects convicted prisoners from "cruel and unusual punishment,"

10

the Fourteenth Amendment protects pretrial detainees from *all* punishment. *See Short v. Hartman*, 87 F.4th 595, 606 (4th Cir. 2023) (emphasis added) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–37 & n.5 (1979)).

Under the Eighth Amendment standard for deliberate indifference to serious medical need, a plaintiff must establish that (1) the convicted prisoner had an objectively serious medical condition and (2) the official acted subjectively with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). However, to establish the subjective element of deliberate indifference, the plaintiff must establish that the official subjectively "[knew] of and disregard[ed] an excessive risk to the inmate's health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837). Thus, if an official is aware of a serious medical need, then they only need to respond reasonably to the risk. *Hixon v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (citing *Farmer*, 511 U.S. at 844). Whether the prison official had knowledge of a substantial risk is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, at 842.

Comparatively, "a pre-trial detainee, need only show that the challenged government action was 'not rationally related to a legitimate nonpunitive purpose or [wa]s excessive in relation to that purpose' to establish deliberate indifference." *Swink v. Southern Health Partners Inc.*, 160 F.4th 438, 451 (quoting *Short*, 87 F.4th at 611). Additionally, the next step under the Fourteenth Amendment standard requires the plaintiff show "that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quoting

11

*Short*, 87 F.4th at 611). However, the plaintiff need not prove the defendant had actual knowledge, instead the plaintiff only must show "'that the defendant[s] should have known of that condition and that risk,' and acted objectively unreasonably." *Id.* (quoting *Short*, 87 F.4th at 611).

In order to examine Coleman's liability under Count I, the Court must determine whether Edwards, in the time leading up to his death, was (1) a pre-trial detainee, as Plaintiffs urge, (2) a pre-trial detainee and a convicted prisoner simultaneously, as Plaintiffs urge in the alternative, or (3) simply a convicted prisoner, as Defendants argue. Courts apply the constitutional standard corresponding to an individual's status at the precise moment of each alleged violation. *See Adams v. Drew*, 906 F. Supp. 1050, 1058 (E.D. Va. 1995) (finding an individual to be a pretrial detainee on the basis of when the alleged violation occurred). Upon first glance, it would seem that Edwards held a dual status as a pretrial detainee *and* a convicted prisoner, because at the time of his death, Edwards was detained (1) pursuant to his November 22, 2024, conviction and jail sentence in Chesterfield County, and (2) while awaiting trial on his grand larceny charges in Henrico County. However, the Court cannot find any cases within the Fourth Circuit to inform its analysis on Edwards' status or to support a determination that Edwards held dual status. Therefore, because the Eighth Amendment deliberate indifference standard is greater than that of the Fourteenth Amendment such that a plaintiff who has sufficiently pleaded a claim under the Eighth Amendment has also done so under the Fourteenth, the Court will evaluate Count I under the Eighth Amendment standard.

Under the Eighth Amendment standard, Plaintiffs must plead facts showing that it is plausible that (1) Edwards had an objectively serious medical condition and (2) Coleman acted subjectively with deliberate indifference. "A medical condition is objectively serious when it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Boley v. Armor Corr. Health Servs.*, 2:21-CV-187, 2022 U.S. Dist. LEXIS 56244, at \*9 (E.D. Va. Mar. 28, 2022) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Moreover, "a deliberately indifferent state of mind can be proven through 'inference from circumstantial evidence.'" *Thompson v. Commonwealth*, 878 F.3d 89, 108 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 842). Accordingly, "a plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Moreover, "claims that a medical professional refused to treat an inmate are typically not dismissed." *Boley v. Armor Corr. Health Servs.*, 2022 U.S. Dist. LEXIS 56244, at \*25–26.

Coleman asserts that Plaintiffs have not sufficiently alleged that she acted with deliberate indifference (Coleman and AMS Mem. in Supp. at 8–9, ECF No. 31), because they failed to establish that she subjectively knew of and deliberately disregarded the risk of serious harm. (AMS and Coleman Mem. in Supp. ¶¶ 19–20.) Coleman contends that in the two (2) alleged encounters with Edwards, Coleman was responsive and her actions

13

were reasonable. (*Id.* ¶ 20.) In the first instance, Coleman contends Edwards did not make any complaints to her about his chest pain (*Id.* ¶ 21.) Next, Coleman contends she timely took Edwards via wheelchair for EMS evaluation. (*Id.* ¶ 22.)

Coleman further contends that, after seeing that Edwards' EKG test results were normal, she accurately reported to the jail physician that EMS had concluded he did not have any cardiac-related issues and instead believed it was muscular. (*Id.*) She also asserts that she was following the physician's orders when she gave Edwards Motrin. (*Id.*) Finally, she argues that although EMS said that Edwards needed to go to the hospital without delay, it was reasonable to deny such transfer because they believed they needed authorization from the jail physician. (*Id.* ¶ 24.)

Coleman also contests the accuracy and truth of the facts put forth in the First Amended Complaint. But because this is an evaluation of her Rule 12(b)(6) Motion to Dismiss, which "tests the sufficiency of a complaint [and] does not resolve contested facts in the case or the factual basis of a claim or defense . . ." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)), Coleman's arguments about the FAC's truthfulness are premature. The Court must take the allegations in the FAC as true and draw reasonable inferences from them in favor of Plaintiff. *See Grooms*, No. 3:14-cv-00849, 2016 U.S. Dist. LEXIS 3277, at *4–5.

Taking the facts asserted in the FAC as true, including that Coleman either did not consult with or deliberately reported inaccurate information to the Jail's physician and that Coleman purportedly believed that she needed a physician's approval to transport Edwards to the hospital, the Court finds it plausible that Coleman's alleged denial of

14

medical care rises to the level of deliberate indifference under the Eighth Amendment standard. *See Mata*, 427 F.3d at 756 (holding that a nurse acted with deliberate indifference when she withheld treatment and evaluation for chest pains because she said there was nothing she could do because the infirmity was closed); *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (holding that an inmate alleging that a nurse destroyed the means for the inmate to access the medical treatment that a doctor ordered was sufficient to state a claim for deliberate indifference under the Eight Amendment). Coleman is a professional nurse with medical training. Under the pleaded facts, Edwards was in such great physical distress that it would have been obvious to Coleman, and even to a layman, that he was suffering from serious medical condition that could result in substantial harm and also in need of medical intervention beyond her administration of an antacid. The Court, therefore, will deny the Motion to Dismiss (ECF No. 30) as to Count I of the FAC.

### B. Count II, Against Gregory in Her Individual Capacity: Promulgating a Policy of Denial, Delay, and/or Withholding of Medical Care, in Violation of 42 U.S.C. § 1983

Plaintiffs have alleged in Count II that Gregory, as the elected Sheriff of Henrico County with the power to institute policies for the Jail, is liable for promulgating an official policy that required Jail officials, including medical personnel, to get the Jail physician's approval before allowing the transport of an detainee to the hospital—which, in the present case, effectively delayed and denied appropriate medical care to Edwards. Plaintiffs bring Count II against Gregory in her individual capacity, alleging that it is personal liability based her own conduct that attaches, rather than supervisory liability. Gregory argues that Count II is a *Monell*-type official capacity claim that requires a

15

pattern of prior incidents, which Plaintiffs have not alleged. Therefore, Gregory contends, the claim is barred and the Court should dismiss it.

Under Section 1983, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them . . . . [but] officers sued in their personal capacity come to court as individuals." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). "A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'" *Id.* To prevail against an official in their individual capacity for an unconstitutional policy or practice, a plaintiff must show:

> (1) whether the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) whether the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) whether there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
> *Fujiwara v. Johnson*, No. 1:24-CV-00957, 2026 WL 595694, at *6 (M.D.N.C.

Mar. 3, 2026) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Plaintiffs have not shown that Gregory had actual or constructive knowledge that her subordinates were engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury. Plaintiffs ascribe knowledge of the policy of requiring a physician to sign off on all detainee transports, as well as the policy itself, based on her role as the policy-maker—they do not allege any independent facts to show how she learned of it. Plaintiffs also direct the Court's attention to the statements by Pickens and

16

Coleman, describing a "new policy" prohibiting detainee transport without physician approval. Without more evidence than the inferences of knowledge Plaintiffs have offered in support of Count II, the Court cannot find that Plaintiffs have plausibly stated a claim for relief. Therefore, the Court will grant Gregory's Motion to Dismiss Count II.

### C. Count V: Willful and Wanton Negligence Resulting in Wrongful Death

Plaintiffs' claims against Coleman and AMS for willful and wanton negligence are governed by the Virginia Medical Malpractice Act. *See, e.g., Whittaker v. O'Sullivan*, No. 3:21cv474. 2022 U.S. Dist. LEXIS 142459, at *22 (E.D. Va. Aug. 9, 2022); *Marro v. Briovarx Infusion Servs., Inc.*, No. 1:18cv1266, 2019 U.S. Dist. LEXIS 234333, 2019 WL 10960566, at *1–2 (E.D. Va. Mar. 7, 2019). "'The difference between ordinary negligence and gross negligence is one of degree; however, the difference between any form of negligence and causes of action for willful and wanton conduct . . . is a matter of kind.'" *Boren v. Northwestern Reg'l Jail Auth.*, No. 5:13cv013, 2013 U.S. Dist. LEXIS 140169, at *16 (W.D. Va. Sept. 30, 2013) (quoting *Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005)).

"'[W]illful and wanton negligence involves such recklessness that the actor is aware that his conduct probably [will] cause injury to another.'" *Smith v. Wellpath LLC*, No. 2:20cv77, 2020 U.S. Dist. LEXIS 273246, at *36 (E.D. Va. Aug. 20, 2020) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 919 (Va. 2004)). Notably, the analysis for willful or wanton negligence "nearly mirrors the subjective prong of the *Farmer* test [for a deliberate indifference analysis], which requires a plaintiff provide

17

'proof of the official's actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" *Dallas v. Craft*, No. 3:21cv349, 2022 U.S. Dist. LEXIS 171365, at *32 (E.D. Va. Sept. 21, 2022) (quoting *Hixson v. Hutcheson*, No. 5:17-cv-032, 2018 WL 814059, at *9 (W.D. Va. Feb. 8, 2018)). Thus, the decisions on whether Coleman acted with willful and wanton negligence mirror that of decisions on the subjective prong of the deliberate indifference claims. *See Boley*, 2022 U.S. Dist. 56244, at *39. Therefore, for the reasons stated earlier, Plaintiffs have provided sufficient factual allegations to plausibly state a claim against Coleman for willful and wanton negligence.

However, AMS contends that they are not vicariously liable, solely based on the contention that Coleman did not act willfully negligent. (AMS and Coleman Mem. in Supp. ¶ 40.) Plaintiffs solely rely on a theory of *respondent superior* liability against AMS for the willful and wanton actions of its employee Coleman. (Compl. ¶ 220.) However, as AMS notes, "'[i]t is well settled in Virginia that where master and servant are sued together in tort [...] the master's liability if any is solely dependent on the servant's conduct.'" (*Id.*) (quoting *Roughton Pontiac Corp. v. Alston*, 372 S.E.2d 147, 149 (Va. 1988)). Accordingly, because the Court determined Plaintiffs' Amended Complaint plausibly states a claim for willful and wanton negligence against Coleman— AMS's employee—Plaintiffs also plausibly state a claim of willful and wanton negligence against AMS.

18

Although Plaintiffs also named Gregory under Count V, Gregory has only moved to dismiss Count II. Therefore, the Court will not address the plausibility of Count V against her.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Gregory's Motion to Dismiss (ECF No. 32) Count II of the FAC and will deny the Motion to Dismiss (ECF No. 30) as to Count I against Coleman and Count V against Coleman and Gregory.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: March 31, 2026
Richmond, Virginia

19